UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

LEON SCARLETT,

                *Petitioner*,

       -*against*-

UNITED STATES OF AMERICA,

                *Respondent*.

--------------------------------X

**MEMORANDUM & ORDER**

10-CR-809 (KAM);
18-CV-2802 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

        Presently before the court is a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255 ("Section 2255") submitted by *pro se* petitioner Leon Scarlett. (ECF No. 936-1, Motion to Vacate, Set-Aside or Correct Sentence ("Pet. Mot.").) Petitioner is currently incarcerated in Federal Correctional Institution, Pollock ("FCI Pollock") in Pollock, Louisiana following his convictions for one count of conspiracy to distribute marijuana in violation of 21 U.S.C. § 841(b)(1)(A) and § 846 and one count of knowingly and intentionally distributing and possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and § (b)(1)(B). (*See* ECF No. 936, Motion Under 28 U.S.C. 2255.; ECF No. 703, Judgment; *see also* ECF No. 708, Sentencing Transcript ("Sent. Tr.").)

        Petitioner seeks to vacate or set aside his conviction on the bases that he was denied a fair trial and suffered from

ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.  For the following reasons, the Petitioner's motion is respectfully DENIED.

**BACKGROUND**

## I.   Mr. Scarlett's Section 2255 Petition

On May 7, 2018, *pro se* Petitioner filed this petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255 ("Section 2255").[1]  (*See* Pet. Mot.)  Petitioner challenges his conviction on five grounds: four of which allege that he was denied a fair trial and one of which alleges that he suffered from ineffective assistance of counsel.  (*Id*.)

Specifically, Petitioner alleges that this court denied him a fair trial by: (1) admitting testimony about certain threatening text messages from an alleged co-conspirator, "Wrinkles," into evidence, (2) denying Petitioner's severance motion, (3) permitting a prior co-defendant, Kareem Forrest, to testify as a cooperating witness during the trial, and (4) cumulatively denying Petitioner due process by ruling on other evidentiary matters, including permitting the jury to

---

[1] Petitioner filed the instant Section 2255 petition on this court's docket for the original criminal prosecution.  Although a separate civil docket was created for Petitioner's habeas petition, *see Scarlett v. United States*, No. 18-cv-2802 (E.D.N.Y. 2018) (KAM), the habeas petition and supporting submissions were filed on the original criminal docket.  *See United States v. Barret et al*, No. 10-cr-809 (KAM) (E.D.N.Y. 2010) (ECF No. 936).  For completeness and clarity, the court files this Memorandum and Order on both the criminal and civil docket.

consider whether Petitioner's use of a false name was evidence
of consciousness of guilt, preventing cross-examination of a
cooperating witness, Leemax Neunie, about his youthful offender
adjudication, and allowing testimony by a cooperating witness,
Clifton Williams, that he had told co-defendant Christopher
Barret to provide marijuana to the Petitioner after Petitioner
left prison.  (*Id*. at 22-45.)  Finally, Petitioner also alleges
that his trial counsel was ineffective because counsel failed to
request a lesser-included offense instruction for the jury and
failed to object to the offense level computation under the
Sentencing Guidelines.  (*Id*. at 46-52.)

## II.  Petitioner's Trial and Conviction

The factual background of this case has previously
been recounted in *United States v. Barret*, 848 F.3d 524 (2d Cir.
2017), wherein the Second Circuit reviewed Petitioner's and co-
defendants' appeals from this court's final judgment entered
October 2, 2013.  For the reasons set forth in the Second
Circuit's decisions, the Second Circuit affirmed the judgment of
this court regarding a number of evidentiary arguments
challenged again in the instant petition.  The court assumes the
parties' familiarity with the facts and procedural history of
this case as outlined in this court's previous decisions.  *See*
*United States v. Barret*, No. 10-cr-809 (KAM), 2012 WL 3229291,
at *1 (E.D.N.Y. Aug. 6, 2012), *aff'd*, 677 F. App'x 21 (2d Cir.

2017); *United States v. Barret*, No. 10-cr-809 (KAM), 2012 WL

171321, at *1 (E.D.N.Y. Jan. 20, 2012), *aff'd*, 677 F. App'x 21

(2d Cir. 2017); *United States v. Barret*, No. 10-cr-809 (KAM),

2011 WL 6181489, at *1 (E.D.N.Y. Dec. 12, 2011); *United States

v. Barret*, 824 F. Supp. 2d 419, 426 (E.D.N.Y. 2011).

Accordingly, the background and procedural history discussed

below only refers to facts relevant to the issues currently in

dispute in the instant petition.

Petitioner's conviction arises from a joint

investigation by the United States Postal Inspection Service,

the Drug Enforcement Administration ("DEA"), and the New York

City and New York State Police Departments into the activities

of a large-scale marijuana distribution organization in Queens,

New York known as the "Fatherless Crew." *Barret*, 848 F.3d at

527. The Fatherless Crew "acted as wholesalers for New York-

based drug dealers, with the drugs shipped from suppliers in

Arizona and California via the United States Postal Service."

*Id*. Petitioner served as an "enforcer" for co-defendant

Christopher Barret, who headed the Fatherless Crew. *Id.*

On December 29, 2011, a federal grand jury in this

district returned the following six-count superseding

indictment:

> Count One charged Barret with being the leader
> of a continuing criminal enterprise in
> violation of 21 U.S.C. § 848(a). Count Two

4

> charged Barret, Scarlett, and Mitchell with
> conspiring to distribute and possess with
> intent to distribute more than 1,000 kilograms
> of marijuana between November 2006 and
> November 2010, in violation of 21 U.S.C. §
> 846. Counts Three and Four charged Barret
> with maintaining a stash house and conspiring
> to maintain a stash house in violation of 21
> U.S.C. §§ 856(a) and 846, respectively. Count
> Five charged Barret and Scarlett with
> distribution and possession with intent to
> distribute at least 100 kilograms of marijuana
> on or about October 7, 2010, in violation of
> 21 U.S.C. § 841(a)(1). Count Six charged
> Barret, Scarlett, and Mitchell with
> possessing, brandishing and discharging
> firearms in furtherance of drug trafficking
> crimes, in violation of 18 U.S.C. § 924(c).

*Id.* at 529; (*see also* ECF No. 395, Superseding Indictment). To
this end, Petitioner was charged with Count Two, Count Five, and
Count Six.

Petitioner was represented at trial by Joseph Gentile,
Esq. (*See* Pet. Mot. at 40-43.) Petitioner was ultimately
convicted by a jury on February 8, 2012 for Counts Two and Five
of the superseding indictment. (*See* ECF No. 703, Judgment; ECF
No. 708, Sentencing Transcript ("Sent. Tr.") 53.) Specifically,
Petitioner was found guilty of conspiracy to distribute 1,000
kilograms or more of marijuana (Count Two) and knowingly and
intentionally distributing and possessing with intent to
distribute 100 kilograms or more of marijuana (Count Five).
(ECF Nos. 703, Judgment; 463, Jury Verdict.) On October 1,
2013, Petitioner was sentenced to concurrent custodial terms of

150 months for Count Two and five years for Count Five, with credit for time served in federal custody since October 7, 2010. (Sent. Tr. at 77; ECF No. 702, Minute Entry 10/1/2013.)

## III. Plaintiff's Appeal of Evidentiary Rulings Made During Trial

On direct appeal after his conviction, Petitioner argued that he was denied a fair trial due to the prejudicial effect of several evidentiary rulings made by this court. (*See* Case No. 12-4663, ECF No. 110, Scarlett Appellate Brief, "Pet. App.")  In the instant petition, defendant challenges a number of these evidentiary rulings again.  These evidentiary rulings and their context at trial are described below.

### A. Admitting Threatening Text Messages from Alleged Co-Conspirator "Wrinkles"

On January 10, 2012, Petitioner opposed the government's motion to admit certain text messages containing threats by "Wrinkles," an alleged co-conspirator, against an individual named Jermaine Thompson, who was perceived to be responsible for Barret's and other co-defendants' arrest.  (*See* ECF No. 413, Letter as to Leon Scarlett dated January 10, 2012.) Petitioner argued that the messages were extremely inflammatory and prejudicial and that there was a lack of evidentiary foundation to establish a correlation between Wrinkles and the co-defendants.  (*See id.*)

On January 11, 2012, this court found that the text messages were admissible under Federal Rule of Evidence 801(d)(2)(E) ("Rule 801(d)(2)(E)").[2]  (ECF No. 561, Trial Transcript at 429:16-431:19.)  To cure prejudicial concerns, this court further clarified that this evidence would only be admitted as to Barret and provided a limiting instruction to the jury immediately before the text messages were published to the jury.  (*Id.* at 437.)

**B. Denying Petitioner's Severance Motion**

Petitioner initially filed a severance motion under Federal Rule of Criminal Procedure 14 on September 20, 2011, alleging that in the absence of a severed trial, he would suffer from "prejudicial spillover of evidence" from his co-defendants. (*See* ECF No. 253, Pretrial Memorandum.)  This court denied Petitioner's severance motion in an Order dated November 16, 2011.  *See United States v. Barret*, 824 F. Supp. 2d 419, 431 (E.D.N.Y. 2011).

Petitioner then renewed his motion for severance on November 29, 2011.  (*See* ECF No. 317, Memorandum in Opposition to Government's Rule 404(b) Application, Request for Anonymous Jury and to Renew a Rule 14 Severance Application, ("Sev. App.").)  In his renewed application, Petitioner argued that the

---

[2] Providing that a statement is not hearsay if the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy.  *See* Fed. R. Evid. 801(d)(2)(E).

recently revealed extent of co-defendant Barret's violent acts

"reveal[ed] the necessity for a trial severance in this case"

and that all of Barret's co-defendants would be severely

prejudiced by the introduction of Mr. Barret's violent actions

at a joint trial. (*Id.* at 21-22.) On December 21, 2011, this

court again denied Petitioner's motion for severance. *See*

*United States v. Barret*, No. 10-cr-809 (KAM), 2011 WL 6704862,

at *26 (E.D.N.Y. Dec. 21, 2011), *aff'd*, 677 F. App'x 21 (2d Cir.

2017).

### C. Permitting Testimony by Cooperating Witness Forrest

On January 17, 2012, Petitioner and co-defendants

objected to the government's request to have Kareem Forrest

testify as a cooperating witness after accepting a plea deal.

(ECF No. 490, Trial Transcript at 693-711.) Petitioner argued

that, as a former co-defendant, Forrest's testimony would be

prejudicial to the defense's case as Forrest had been present

for co-counsel's and co-defendant's meetings and was privy to

the defense strategy. (*See id.* at 693-95.) The government

countered that it was permissible for a defendant to plead

guilty in the middle of a trial and testify as a cooperating

witness in the same trial. (*Id.* at 700-01.)

This court provided both parties the opportunity to

submit motions regarding the issue of Forrest's testimony. (*Id.*

at 710-11.) In addition, this court provided the following jury

instruction to address Forrest's absence from the trial with

defense counsels' approval:

> One co-defendant is no longer on trial, and
> you are not being asked, or you will not be
> asked to reach a verdict as to him. You are
> not to be concerned with that co-defendant,
> nor are you to speculate about the reasons why
> he is no longer part of this trial, and this
> fact should not affect or influence your
> verdict with respect to the remaining
> defendants. You must base your verdict as to
> the remaining defendants solely on the basis
> of evidence, or lack of evidence, against each
> defendant.

(*Id.* at 712.)  The court later granted the government's motion

to admit Forrest's testimony in a sealed Memorandum and Order

dated January 21, 2012.  (*See* ECF No. 442, Memorandum and Order

Regarding Sealed Motion in Limine to Admit Forrest Testimony.)

### D. Permitting Jury to Consider Whether Petitioner's Use of a False Name Was Evidence of Consciousness of Guilt

On January 23, 2012, the government called Leemax

Neunie to the stand.  (*See* January 23, 2012 Trial Transcript at

1739.)  During direct examination, Neunie testified that

Petitioner had told him that he was using the name "Leon

Scarlett," and that the name was given to him by somebody in the

building where Petitioner had lived.  (*Id.* at 1752.)

On February 1, 2012, the court provided the jury with

the following instruction regarding the use of false names:

> There has also been evidence that one or more
> defendants may have used a false name as
> opposed to a nickname. If you find that the

defendant knowingly used a name other than his
own in order to conceal his identity and to
avoid identification, you may, but are not
required to, infer that the defendant believed
that he was guilty. You may not, however,
infer on the basis of this alone, that the
defendant is, in fact, guilty of the crime for
which he is charged. Whether or not evidence
of the use of a false name shows that the
defendant believed he was guilty and the
significance, if any, to be attached to that
evidence are matters for you to determine.

(ECF No. 605-1, Trial Transcript at 2855.)

### E. Preventing Cross-Examination of Cooperating Witness Neunie's Youthful Offender Status

On January 23, 2012, the government moved to preclude the defendants' cross-examination of cooperating witness Neunie's juvenile criminal record. (*See* January 23, 2012 Trial Transcript at 1723-24.) Specifically, the government sought to preclude reference to Neunie's actions prior to conviction: in 1996, Neunie and his girlfriend were found by the police at an apartment where marijuana was sold and Neunie had attempted to hide his girlfriend's pocketbook—which contained a gun—in another room in the apartment. (*Id.* at 1726-27.) Neunie, then a minor, subsequently pled guilty and was sentenced to a five-year period of probation. (*Id.* at 1727-28.)

Petitioner's counsel argued that the underlying facts to Neunie's youthful offender status were relevant as to Neunie's credibility. (*Id.* at 1724.) The government, in turn, countered that details of the past conviction did not bear on

10

credibility.  (*Id*. at 1727.)  After careful deliberation, this court ultimately granted the government's request to preclude cross-examination on Neunie's juvenile record because the conviction was time-barred under Federal Rules of Evidence 609(b), and courts in the Second Circuit have not found drug or gun possession as probative of credibility.  (*Id*. at 1736-37.)

### F. Permitting Testimony by Cooperating Witness Williams

On January 20, 2012, the government called Clifton Williams to testify in court.  (*See* ECF No. 493, Trial Transcript.)  During his testimony, Williams described knowing Petitioner (using the alias "Piggy") from Jamaica and seeing him again at Barret's (using the alias "Mouthy") house in 2010.  (*Id*. at 1410-14.)  Williams also testified to having a conversation with Barret to provide a pound of marijuana each to Petitioner and co-defendant Omar Mitchell (using the alias "Sox") with the understanding that they had just left prison.  (*Id*. at 1415-16.)  In relevant part, Williams testified:

> Q: Did you ever have a conversation with "Mouthy" about whether he was providing marijuana to "Piggy" and "Sox"?
>
> A: No, sir. I told him to give – I told him to give "Piggy" a pound and give "Sox" a pound.
>
> Q: You told "Mouthy" to give a pound of weed to "Sox" and a pound of weed to "Piggy"?
>
> A: Yes, sir.
>
> Q: Can you please explain why you did that?

A: Because my understanding that they were just leave prison, sir.

(*Id.*)  Petitioner's counsel objected to this exchange as inflammatory, prejudicial, and without context.  In particular, Petitioner's counsel was concerned that the exchange gave the false impression that Petitioner had left prison in 2010, when Petitioner had in fact left prison in 2008.  (*Id*. at 1423-24.)

After deliberation with counsel from both parties, this court issued the following instruction to the jury:

> Ladies and gentlemen of the jury, I'd like to give you some instructions. We are striking from the record the witness's answer to the last question. You are to disregard it and put it out of your minds, and I specifically instruct you that the witness's understanding regarding his last answer is not accurate.

(*Id*. at 1445.)  Notably, Petitioner's counsel was directly involved in crafting the court's instruction to the jury and offered no additional objection following the court's statement. (*See id.* at 1417-45.)

## IV.  Challenged Elements of Advocacy from Petitioner's Counsel

### A. Lesser-Included Offense Jury Instruction

On January 27, 2012, this court held a charging conference for this case.  (*See generally* January 27, 2012 Trial Transcript.)  During the conference, counsel for both sides weighed in on the court's proposed jury instructions, including

Count Two's conspiracy charge in violation of 21 U.S.C. §
841(b)(1)(A).  (*See id*. at 77-78.)

Petitioner's counsel, Joseph Gentile, joined other co-
defendants' counsel in discussions on how to frame a lesser
included count into the jury instructions.  (*See id*. at 81.)
Specifically, Gentile argued that, because the government had
alleged that the offense involved 1,000 kilograms or more of
marijuana, the court should direct the jury to determine whether
the defendant "knowingly and intentionally became a member of
the conspiracy involving a thousand kilograms of marijuana" and
then provide the jury with "further instructions regarding
whether or not a lesser amount, namely 100 kilograms of
marijuana, was involved in this case."  (*Id*. at 78-81.)
Gentile, however, conceded that the verdict sheet provided to
the jury would enable the jury to determine how much marijuana
was at issue.  (*Id*. at 85.)

The court acknowledged the defense's view that it
would be beneficial to a defendant if the jury found that he was
not involved in a conspiracy involving a thousand kilograms of
marijuana and instead found a lesser amount.  (*Id*. at 84.)
Ultimately, on February 1, 2012, the court provided the
following jury instruction for Count Two:

> If you find beyond a reasonable doubt that the
> government has proven the charged conspiracy
> in Count Two, you will also be asked to

> separately consider whether the government has
> proven beyond a reasonable doubt that the
> conspiracy involved 1000 kilograms or less.

(ECF No. 605-1, Trial Transcript at 2894.)  In addition, the

court provided the following instruction regarding the verdict

sheet:

> I will provide you with a special verdict
> sheet which asks you whether the government
> has proven beyond a reasonable doubt the type
> of drug and the quantity involved in this
> offense was in fact the type of drug and
> quantity charged in each Count.
>
> Again, I ask you to make these findings, but
> they are not elements of the offense, and they
> need not be proven for you to find the
> defendant guilty of the respective counts.

(*Id.* at 2915-16.)

### B. Offense Level Computation

After the jury found Petitioner guilty of Counts Two

(conspiracy to possess with intent to distribute 1,000 kilograms

or more of marijuana) and Five (possession with intent to

distribute 100 kilograms or more of marijuana), the Petitioner

filed post-trial motions which were denied.  (*See* ECF Nos. 473,

479, 563.)  In preparation for Petitioner's sentencing on

October 1, 2013, this court reviewed the trial transcript of the

case, the presentence report ("PSR") and related addendums and

objections, sentencing memorandums from both parties, and

letters from the government, Petitioner's counsel Gentile, and

Petitioner.  (ECF No. 708, Sent. Tr. at 3-4.)  At the

sentencing, Gentile argued on behalf of Petitioner for a mandatory minimum sentence of 120 months, noting that a sentence of 262 months would be "on the verge of a life sentence for all intents and purposes." (*Id.* at 25-26.) The government countered for a sentence within the guidelines range for Petitioner, which the court found to be between 262 and 327 months based on Petitioner's Adjusted Offense Level of 36 and Criminal History Category of IV. (*Id.* at 26-30.)

Prior to sentencing, Gentile made multiple objections to the PSR on behalf of the Petitioner, including objections to the description of his role as an enforcer in the Barret drug organization; the calculation of Petitioner's base offense level and criminal history level, under the sentencing guidelines; the application of a firearms enhancement, and the application of the obstruction of justice enhancement. (*Id.* at 30; *see also* ECF No. 625, Objection to PSR by Leon Scarlett.)

Specifically, Gentile objected to the PSR's base offense level computation and protested the failure to apply a mitigating role adjustment to Count Two based on Petitioner's alleged noninvolvement with the drug conspiracy. (Sent. Tr. at 34.) Gentile also argued that Petitioner's base offense level under Guideline 2D1.1(a)(5) and (c)(5) should be 30 instead of 32 because Petitioner was not personally accountable for 1000 kilograms or more of marijuana. (*Id.* at 36.) Gentile also

objected to the application of a two-level enhancement under Guideline 2D1.1(b)(1) for possession of a firearm and the application of two-level enhancement for obstruction of justice under Guideline 3C1.1 based on Petitioner's use of false information regarding his identity and citizenship. (*See id.* 39-48.) In addition, Gentile sought downward departures for Petitioner under the Guidelines based on Petitioner's lack of culpability and his conditions of confinement at the MDC. (*Id.* at 51-52.)

After considering the trial record as a whole, this court found that there was evidence indicating that Petitioner was an active and integral member of Barret's drug organization, and that Petitioner's role included both distributing marijuana and acting as an enforcer to support the continuance of the drug organization. (*Id.* at 36.) This court also concluded that Petitioner was accountable for at least 1000 kilograms of marijuana due to his participation in the conspiracy. (*Id.* at 38.) Accordingly, this court found that no mitigating role adjustment was warranted and that the applicable base offense level was 32. (*Id.* at 39.) Moreover, this court found by a preponderance of the evidence that Petitioner gave a false place of birth, name, and identity to the Probation Department with the intent to obstruct justice and possessed a firearm. (*Id.* at 45-46.) Finally, the court declined to apply a downward

departure for lack of culpability or Petitioner's conditions of
confinement. (*Id.* at 52-53.) Accordingly, this court
determined Petitioner's total adjusted offense level to be 36.
(*Id.* at 54-55.)

After giving respectful consideration to the advisory
guidelines and sentencing factors, the court sentenced
Petitioner to a sentence below the advisory guideline range.
(*Id.* at 76-77.) Specifically, the court imposed a custodial
term on Count Two, of 150 months, and on Count Five, of five
years, which ran concurrently, with credit for time served in
federal custody since October 7th, 2010. (*Id.* at 77.) The
court also imposed a five-year term of supervised release to run
concurrently on each count. (*Id.* at 77-78.)

## V.    Petitioner's Direct Appeal to the Second Circuit

On January 30, 2014, Petitioner appealed his judgment
of conviction, arguing, in part, that he was denied a fair trial
because the court erred in (1) admitting testimony about certain
threatening text messages from an alleged co-conspirator,
"Wrinkles," into evidence, (2) denying Petitioner's severance
motion, (3) permitting a prior co-defendant, Kareem Forrest, to
testify as a cooperating witness during the trial, and (4)
cumulatively denying Petitioner due process by ruling on other
evidentiary matters, including permitting the jury to consider
whether Petitioner's use of a false name was evidence of

consciousness of guilt, preventing cross-examination of a cooperating witness, Leemax Neunie, about his youthful offender adjudication, and allowing testimony by a cooperating witness, Clifton Williams, that he had told Christopher Barret to provide marijuana to the petitioner after Petitioner left prison. (*See* Pet. App. at 32-68.)

On February 15, 2017, the Second Circuit simultaneously issued both a summary order and an opinion addressing Petitioner's and co-defendants' appeals and affirming this court's judgments in this case. *See United States v. Barret*, 677 F. App'x 21 (2d Cir. 2017) (summary order affirming the judgments of the district court); *see also United States v. Barret*, 848 F.3d 524 (2d Cir. 2017) (opinion affirming the judgments of the district court).

In the summary order, the Second Circuit affirmed this court's evidentiary decisions to (1) admit testimony about certain threatening text messages from "Wrinkles" into evidence, (2) deny Petitioner's severance motion, (3) permit the jury to consider whether a Petitioner's false name was evidence of consciousness of guilt, (4) prevent cross-examination on Neunie's past youthful offender adjudication, and (5) allow testimony by a cooperating witness, Williams, that he had told Barret to provide marijuana to the petitioner after Petitioner left prison. *See Barret*, 677 F. App'x at *23-24.

In the opinion, the Second Circuit held that (1) testimony of a former co-defendant did not violate remaining defendants' Sixth Amendment right to counsel, (2) this court did not abuse its discretion in allowing Forrest to testify as a cooperating witness, and (3) this court adequately took steps to avoid unfair prejudice from admitting Forrest's testimony. *See Barret*, 848 F.3d at 532-34. As such, the Second Circuit also affirmed this court's decision to permit Forrest to testify during the trial. *Id*.

## LEGAL STANDARD

A prisoner in federal custody may challenge the validity of his sentence by petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *Reisman v. United States,* No. 12–cv–291, 2013 WL 5774592, at *3 (E.D.N.Y. Oct. 24, 2013) (citing *Adams v. United States,* 372 F.3d 132 (2d Cir. 2004)).

Collateral relief from a final judgment is available only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a

fundamental defect which inherently results in a miscarriage of justice.'" *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States,* 368 U.S. 424, 428 (1962)). The grounds for relief under § 2255 are limited out of "respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place." *Davis v. United States*, No. 13-CR-986, 2019 WL 1533073, at *2 (S.D.N.Y. Apr. 9, 2019) (quoting *Bokun*, 73 F.3d at 12).

Section 2255 petitions must be filed in the district court "which imposed the sentence" being challenged. 28 U.S.C. § 2255(a). Additionally, prisoners may not use Section 2255 as a substitute for a direct appeal. *Marone v. United States,* 10 F.3d 65, 67 (2d Cir. 1993) (citing *United States v. Frady,* 456 U.S. 152, 165 (1982)). Generally, with the exception of ineffective assistance claims, "a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." *Zhang v. United States,* 506 F.3d 162, 166 (2d Cir. 2007) (citation omitted). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States,* 523 U.S. 614, 622 (1998) (citations omitted).

Further, it is well established that Section 2255 may not be used to litigate issues that have been decided adversely to a defendant on direct appeal. *United States v. Sanin,* 252 F.3d 79, 83 (2d Cir. 2001); *see Reese v. United States,* 329 F. App'x 324, 326 (2d Cir. 2009) (summary order); *United States v. Natelli,* 553 F.2d 5, 7 (2d Cir. 1977) (per curiam) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255."). "[A] petitioner may bring an ineffective assistance of counsel claim [in a petition pursuant to Section 2255] whether or not the petitioner could have raised the claim on direct appeal." *Mui v. United States,* 614 F.3d 50, 54 (2d Cir. 2010) (citing *Massaro v. United States,* 538 U.S. 500, 509 (2003)).

In reviewing the instant petition, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir. 1983) (noting that courts should review *pro se habeas* petitions with a lenient eye). Accordingly, the court is obliged to interpret petitioner's pleadings as raising the strongest arguments they suggest.

*Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009); *Martin v. United States,* 834 F. Supp. 2d 115, 119 (E.D.N.Y. 2011) (citing *Williams,* 722 F.2d at 1050).

In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A hearing is not required where the allegations are "vague, conclusory, or palpably incredible." *Machibroda 131 v. United States*, 368 U.S. 487, 495 (1962). Therefore, to warrant a hearing, the motion "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

## DISCUSSION

Petitioner filed the instant petition for a writ of *habeas corpus* pursuant to Section 2255 to vacate his conviction for violations of 21 U.S.C. § 841(a)(1). Petitioner challenges his conviction on five grounds: specifically, four of these grounds assert that Petitioner received an unfair trial due to this court's rulings and the fifth ground asserts an ineffective assistance of counsel claim.

On October 15, 2019, the government filed its response to Petitioner's motion. (*See* ECF No. 1011, Opposition to

Defendant's Motion to Vacate, ("Gov. Opp.").)  In its response,
the government argues that Petitioner's arguments are without
merit.  (*Id.*)  In particular, the government argues that
Petitioner's claims that he was denied a fair trial do not merit
relief under Section 2255 not only because they were correctly
decided, but also because the Second Circuit has already
rejected these arguments after the Petitioner raised them on
direct appeal.  (*Id.* at 16-31.)  The government also argues that
the alleged threatening text messages were not unfairly
prejudicial and Petitioner failed to raise this argument on
direct appeal.  (*Id.* at 30-31.)  Finally, the government argues
that Petitioner's counsel provided effective assistance in this
case.  (*Id.* at 31-36.)

On December 7, 2020, Petitioner's counsel Peter J.
Tomao, Esq. filed a supplement to Petitioner's Section 2255
motion in reply to the government's opposition.  (*See* ECF No.
1046, Reply to Response to Motion to Vacate, "Pet. Supp.")  In
his reply, Mr. Tomao confirmed that Petitioner's claims
regarding his denial of fair trial argument were previously
raised on appeal.[3]  (*Id.*)  Notably, Mr. Tomao also clarified
that, contrary to the government's contention, Petitioner's
claim challenging this court's ruling admitting evidence

---

[3] Specifically, Mr. Tomao notes that these claims were raised in Point II,
III, and VII of Petitioner's appellate brief, respectively.

regarding threatening communications had also been previously raised on direct appeal.[4]  (*Id.* at 1.)  Consequently, Mr. Tomao asserts that the only argument Petitioner raises for the first time in this Section 2255 petition is his ineffective assistance of counsel claim.  (*Id.* at 2.)  Mr. Tomao also made a number of corrections to the Petitioner's *pro se* filing, noting that (1) Petitioner was convicted of one conspiracy count and one substantive count, not two conspiracies as Petitioner noted in his Section 2255 motion and (2) contrary to what is stated in Petitioner's motion, the Petitioner's trial counsel did in fact object to the base offense level computation of the drug quantity.  (*See generally id.*)  To date, the government has not filed a response to Mr. Tomao's supplement in reply to the government's opposition to Petitioner's Section 2255 motion.  For the reasons stated below, the petition is respectfully DENIED.

## I.   Petitioner's Claims That Were Previously Addressed on Direct Appeal Are Procedurally Barred

Petitioner argues in part that this court has erred in a number of evidentiary rulings at trial that have cumulatively denied him a fair trial.  (Pet. Mot. at 22-45.)  The government argues that these claims do not merit relief under Section 2255,

---

[4] Specifically, Mr. Tomao notes that this claim was previously raised in Point I of Petitioner's appellate brief.

in part because they have already been raised on direct appeal and were rejected by the Second Circuit. (Gov. Opp. at 16-26.)

It is well-settled that Section 2255 may not be used "relitigate questions which were raised and considered on direct appeal." *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001); *see also United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977) (per curiam) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255"); *see, e.g., Riascos-Prado v. United States,* 66 F.3d 30, 35 (2d Cir. 1995) (declining to consider movant's claims in a section 2255 motion where they were "a slightly altered rearticulation" of claims previously raised, and rejected, on direct appeal). If a petitioner raises an issue that was addressed on direct appeal, the court may find it procedurally barred in a subsequent Section 2255 motion. *Sanin*, 252 F.3d at 83.

Furthermore, the Second Circuit has instructed that "[r]econsideration is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980). The change in law, however, must not have been available to the petitioner on direct appeal. *See Sanin*, 252 F.3d at 85 (holding that a rule

that was available to petitioner on direct appeal cannot fairly be said to be an "intervening change in the law").  Thus, a petitioner is procedurally barred from raising issues in a current Section 2255 petition that (1) have been previously litigated on direct appeal and (2) have not been affected by an intervening change in the law.  *Id*. at 85.

In this case, the Petitioner has previously raised all arguments related to his denial of fair trial claim on direct appeal.  (*See* Pet. App.)  In particular, Petitioner has already argued that this court erred in (1) admitting testimony about certain threatening text messages from "Wrinkles" into evidence, (2) denying Petitioner's severance motion, (3) permitting a prior co-defendant Forrest to testify as a cooperating witness during the trial, and (4) cumulatively denying Petitioner due process by ruling on other evidentiary matters, including permitting the jury to consider whether Petitioner's use of a false name was evidence of consciousness of guilt, preventing cross-examination of a cooperating witness Neunie about his youthful offender adjudication, and allowing testimony by a cooperating witness Williams who allegedly sold marijuana to the Petitioner after Petitioner left prison.  (Pet. Mot. at 22-45.)

The Second Circuit, in turn, reviewed Petitioner's appeal and simultaneously issued an opinion and summary order affirming this court's judgments on February 15, 2017.  *See*

*United States v. Barret*, 848 F.3d 524 (2d Cir. 2017) (opinion affirming this court's decision to admit Forrest's testimony); *United States v. Barret*, 677 F. App'x 21 (2d Cir. 2017) (summary order affirming this court's prior judgments regarding the remainder of Petitioner's arguments). Furthermore, Petitioner has failed to identify any intervening change in law or new law that would have exonerated him had it been in force before the conviction was affirmed on direct appeal. *See Chin*, 622 F.2d at 1092.

Accordingly, with no intervening factors that may entitle Petitioner to revisit his claims regarding this court's rulings, Petitioner's arguments are procedurally barred and the court declines to review Petitioner's claims related to his denial of fair trial. *See, e.g.*, *Graff v. United States*, 269 F. Supp. 2d 76, 79 (E.D.N.Y. 2003) (declining to review claims in section 2255 petition that were already addressed by the Second Circuit); *Greenidge v. United States*, No. 01-cv-4143 (ILG), 2002 WL 720677, at *2 (E.D.N.Y. Mar. 27, 2002) (same).

## II.  Petitioner Was Not Denied A Fair Trial

Even if the court were to address the merits of Petitioner's arguments challenging this court's prior evidentiary rulings, the court would conclude that Petitioner was not denied a fair trial for the reasons set forth below.

**A. The Text Messages from Alleged Co-Conspirator "Wrinkles"**

Petitioner argues that this court's decision to admit text messages sent from "Wrinkles" were highly prejudicial and inflammatory, and that this court's instruction that the jury should only consider the text messages against Barret failed to mitigate any prejudicial "spillover effect" to Petitioner. (Pet. Mot. at 15.) In response, the government argues that Petitioner failed to establish prejudice from the introduction of this evidence, particularly because this court explicitly instructed the jury to consider the text messages only as to Barret no other defendant. (Gov. Opp. at 30-31.)

The court finds that the contested text messages from "Wrinkles" were appropriately admitted as originally ruled on January 11, 2012 and affirmed by the Second Circuit on February 15, 2017. (*See* ECF No. 561, Trial Transcript at 427-37); *see also Barret*, 677 F. App'x at 24 (wherein the Second Circuit found that this court's admission of the "text messages threatening a person who Barret believed was a witness against him" was appropriate because the "evidence admitted against Barret was indicative of Barret's relationships with co-conspirators").

Specifically, the court concludes that its original ruling that the text messages satisfied each of the three prongs required to admit a co-conspirator's statement under Federal

Rule of Evidence 801(d)(2)(E) as explained in *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) and *United States v. Alameh*, 341 F.3d 167, 177 (2d Cir. 2003) was correct. (ECF No. 561, Trial Transcript at 429-35.) In so ruling, this court found that (1) a conspiracy existed at the time of the statement, (2) the statements were made in furtherance of the conspiracy because they were motivated by a desire to protect or enhance the conspiracy, and (3) there was evidence that both the declarant (Wrinkles) and the defendant against whom the statements were offered (Barret) were members of the conspiracy. (*Id.* at 429-31.) Furthermore, this court found that a limiting instruction would resolve any prejudicial concerns as juries are presumed to follow the instructions of the court. (*Id.* at 34-35); *see United States v. Baker*, 899 F.3d 123, 134 (2d Cir. 2018) ("[J]urors remain true to their oath and conscientiously observe the instructions and admonitions of the court." (internal quotation marks omitted)). For these reasons, the court concludes that the evidence was properly admitted at trial and did not result in undue prejudice to the Petitioner.

## B. Petitioner's Severance Motion

Petitioner argues that this court abused its discretion in denying Petitioner's severance motion because a joint trial resulted in evidence against Barret being admitted that unfairly prejudiced Petitioner. (Pet. Mot. at 19.) The

government counters that this claim is meritless as the vast majority of the admitted evidence was relevant to all defendants and would have been admissible even if Petitioner had received a separate trial, and because the remaining evidence was subjected to appropriate limiting instructions.  (Gov. Opp. at 19.)

Even if the court were to examine the merits of Petitioner's severance motion, he has not made the requisite showing of prejudice and abuse of discretion.  *See United States v. Yousef*, 327 F.3d 56, 150 (2d Cir. 2003) ("[A] district court order denying a Rule 14 motion is considered virtually unreviewable and will be overturned only if a defendant can show prejudice so severe that his conviction constituted a miscarriage of justice and that the denial of his motion constituted an abuse of discretion." (citation and quotation marks omitted)); *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) ("[S]everance does not raise a question of law for our review; rather, its application is tested under the abuse of discretion standard."); *see, e.g.*, *Reiter v. United States*, 371 F. Supp. 2d 417, 459 (S.D.N.Y. 2005) (reviewing 2255 habeas petition challenging ruling on severance motion for abuse of discretion).

This court finds that severance was not warranted in this case for the reasons stated in this court's prior decisions dated November 16, 2011 and December 21, 2011.  These decisions

were reviewed and subsequently affirmed by the Second Circuit on direct appeal. *See United States v. Barret*, No. 10-cr-809 (S-3) (KAM), 2011 WL 6704862 (E.D.N.Y. Dec. 21, 2011), *aff'd,* 677 F. App'x 21 (2d Cir. 2017); *see also United States v. Barret,* 824 F. Supp. 2d 419 (E.D.N.Y. 2011).[5]

In the November 16, 2011 decision, this court noted that joint trials are generally allowed under Rule 8(b) of the Federal Rules of Criminal Procedure ("Rule 8(b)") as they "promote efficiency and prevent the injustice of inconsistent verdicts." *Barret*, 824 F. Supp. 2d at 432 (quoting *Zafiro v. United States,* 506 U.S. 534, 537 (1993)). Moreover, joint trials "limit inconveniences to witnesses, avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury." *United States v. Rucker,* 32 F. Supp. 2d 545, 547 (E.D.N.Y. 1999). Nonetheless, a court "should sever defendants who are properly joined under Rule 8(b) when the prejudice against a defendant is so great that 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from

---

[5] The court's November 16, 2011 decision first denied Petitioner's initial severance motion as filed on September 20, 2011. *See United States v. Barret,* 824 F. Supp. 2d 419 (E.D.N.Y. 2011). After Petitioner renewed his severance application on November 29, 2011, this court again denied Petitioner's motion for severance in its December 21, 2011 decision, citing to its reasoning in its earlier November 16, 2011 decision. *See United States v. Barret*, No. 10-cr-809 (S-3) (KAM), 2011 WL 6704862 (E.D.N.Y. Dec. 21, 2011), *aff'd,* 677 F. App'x 21 (2d Cir. 2017). The Second Circuit affirmed this court's December 21, 2011 decision in a summary order. *See Barret*, 677 F. App'x 21.

making a reliable judgment about guilt or innocence.'" *Barret*, 824 F. Supp. 2d at 432 (quoting *United States v. Rittweger,* 524 F.3d 171, 179 (2d Cir. 2008)).

Ultimately, "the determination of whether such prejudice exists is highly fact-specific and must be evaluated on a case-by-case basis. Moreover, the decision of whether to sever a trial is committed to the sound discretion of the district court." *Id*. at 433 (internal citations omitted). The defendant, notably, "bears an 'extremely difficult burden' of proving that the prejudice would be so great as to deprive him of his right to a fair trial." *Id*. (internal citation omitted).

Applying the foregoing standard, this court found that Petitioner had failed to meet his heavy burden of proving that severance was warranted. *Id*. Specifically, this court ruled that: (1) the evidence not directly related to Petitioner would not cause so much "spillover prejudice" as to warrant severance, (2) severance was not required simply because one form of evidence may not directly implicate Petitioner, (3) the co-defendants' defenses were not at odds with one another, (4) the trial was not so complex or large as to warrant severance, and (5) the court's curative instructions could adequately address any legitimate prejudice concerns. *Id*. at 433-436.

With respect to Petitioner's renewed severance motion based on the claim that he would face "spillover prejudice" from

violent evidence unrelated to him, the court noted in its December 21, 2011 decision that its *in limine* rulings, which "preclud[ed] the introduction of prejudicial evidence concerning certain murders that predate the dates alleged in the Superseding Indictment and the death of an innocent bystander," significantly reduced the risk of "spillover prejudice" against Petitioner in a joint trial. *Barret*, 2011 WL 6704862, at *26.

Having reviewed the rationale in these prior decisions and Petitioner's instant petition, this court concludes that it did not commit an abuse of discretion by denying Petitioner's severance motion. Accordingly, Petitioner was not denied a fair trial based on this court's rulings regarding the severance motion.

## C. Testimony by Cooperating Witness Forrest

Petitioner argues that this court erred in permitting Forrest to testify after switching from a co-defendant to one of the government's cooperating witnesses because this decision violated his right to counsel and unfairly prejudiced him. (Pet. Mot. at 26-29.) In reply, the government argues that the court was correct in permitting Forrest to testify because the court took proper steps to avoid unfair prejudice. (Gov. Opp. at 22-27.)

This court agrees with the Second Circuit's holding that this court did not err in admitting Forrest's testimony.

*See Barret*, 848 F.3d at 527.  In its opinion, the Second Circuit

held that a "co-defendant who turns government witness during

trial may be permitted to testify at that trial, provided that

the district court takes steps to avoid unfair prejudice."  *Id.*

at 533.  The Second Circuit then found that this court

"adequately mitigated" the risk of unfair prejudice through its

cautionary instructions to the jury, which helped ensure that

the jurors "(1) did not draw negative inferences against the

remaining defendants; (2) did not use Forrest's guilty plea as

any evidence of the guilt of the remaining co-defendants; and

(3) gave Forrest's testimony the weight they felt it deserved."

*Id.* at 534.  For the reasons explained by the Second Circuit,

the court similarly concludes that it did not err in permitting

Forrest's testimony at trial.

### D. Other Rulings on Evidentiary Matters

Finally, Petitioner also alleges that he was denied a

fair trial in violation of his Sixth Amendment right because

this court: permitted the jury to consider whether Petitioner's

use of a false name was evidence of consciousness of guilt;

prevented cross-examination of a cooperating witness Neunie,

about his youthful offender adjudication, and; and allowed

testimony by a cooperating witness Williams, that he had told

co-defendant Barret to provide marijuana to the Petitioner after

Petitioner left prison.  (Pet. Mot. at 29-40.)

The Second Circuit reviewed these issues on direct appeal and dismissed them as meritless. *See Barret*, 677 F. App'x at 24 (wherein the court concludes, "We have considered the remainder of Appellants' arguments and find them to be without merit."). For the reasons set forth below, the court also finds that Petitioner's evidentiary challenges are meritless.

### 1. Whether Petitioner's Use of a False Name Was Evidence of Consciousness of Guilt

Petitioner argues that this court erred in permitting testimony that the Petitioner was allegedly using a false name and in instructing the jury that they could consider Petitioner's use of a false name as consciousness of guilt. (Pet. Mot. at 30-32). As evidence of potential prejudice, Petitioner argues that there was no evidence at trial to indicate that Petitioner had adopted his present name for the purpose of concealing his identity. (*Id*. at 30.) The government, however, contends that this court did not err in admitting this evidence because the court had taken sufficient safeguards against any possible misunderstanding through its jury instruction. (Gov. Opp. at 27.) Upon review, this court finds that it did not err in permitting the jury to consider use of a false name as evidence of consciousness of guilt.

The Second Circuit has accepted that "[i]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, *assumption of a false name*, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *United States v. Steele*, 390 F. App'x 6, 12 (2d Cir. 2010) (summary order) (quoting *United States v. Myers,* 550 F.2d 1036, 1049 (5th Cir. 1977) (internal quotation marks omitted)) (emphasis added). In addition, "[a] consciousness-of-guilt instruction based upon the use of false names is permissible if there is record evidence 'on the basis of which the jury could make such a finding.'" *United States v. Davis*, 159 F.3d 1348 (2d Cir. 1998) (quoting *United States v. Stevens,* 83 F.3d 60, 67 (2d Cir. 1996) (per curiam). Accordingly, it was proper for this court to admit testimony that discussed any false names or alternative identities Petitioner and co-defendants used over the course of the conspiracy. Moreover, there was sufficient evidence that Petitioner and co-defendants may have used false names to warrant a consciousness-of-guilt jury instruction.

Furthermore, even if -- as Petitioner suggests -- he used a false name for a purpose other than concealing his identity, this court did not err in instructing the jury that the use of false names could imply consciousness of guilt. Rather, it is sufficient that the jury had the evidence and

agency to determine whether Petitioner used a false name in order to conceal his identity, and whether they could infer that this meant Petitioner believed he was guilty. *See United States v. Davis*, 159 F.3d 1348, 1998 WL 514156 at *4 (2d Cir. 1998) (explaining that "[t]he district court was not required to instruct the jury that there may be legitimate reasons for using false names; the jury heard evidence suggesting an innocent explanation for the use of the false names, evidence that the jury did not credit"). Accordingly, this claim is denied.

### 2. *Precluding Cross-Examination of Witness Neunie's Youthful Offender Status*

Petitioner argues that this court abused its discretion in preventing cross-examination of Neunie's youth offender status because the underlying facts to his youthful offender adjudication were relevant to his truthfulness. (Pet. Mot. at 40-42.) In its reply, the government argues that this court was correct to preclude this cross-examination as Neunie's youthful offender adjudication was not probative of truthfulness and was prohibited by Rule 608(b) of the Federal Rules of Evidence. (Gov. Opp. at 28-29.) The court finds that this claim is meritless.

Rule 609(b) of the Federal Rules of Evidence limits the use of evidence of a criminal conviction to attack a

witness's character for truthfulness "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later."  Fed. R. Evid. 609(b).  Under this rule, evidence of a conviction over 10 years old is admissible only if "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  *Id.*  Importantly, under Rule 609(b), "convictions over 10 years old [should] be admitted very rarely and only in exceptional circumstances," as "convictions over ten years old generally do not have much probative value."  *United States v. Brown*, 606 F. Supp. 2d 306, 313 (E.D.N.Y. 2009) (citing Fed. R. Evid. 609(b) advisory committee's note).

In this case, the contested evidence was clearly older than 10 years: the witness, Neunie, was convicted in 1996 and was sentenced to a five-year period of probation.  (*See* January 23, 2021 Trial Transcript at 1725-28.)  At the time of trial in 2012, 16 years had passed since Neunie's conviction and 11 years had passed since he completed his probation.  Furthermore, as discussed at the trial, even if the court added the five years probation onto Neunie's date of conviction, the relevant date for purposes of Rule 609(b) would fall on 2001 -- eleven years

38

before the date of the trial and outside the ten year period established by Rule 609(b). (*See id.* at 1735-36.) For the reasons previously explained at trial, the court concludes that Petitioner failed to show that permitting cross-examination of Neunie's stale youthful offender adjudication would be probative of truthfulness, and cross-examination on this subject was properly precluded. (*See id.* at 1725-37.) Indeed, courts have found that the minimal probative value of a prior conviction for gun possession is far outweighed by its potential for unfair prejudice. *See Brown*, 606 F. Supp. 2d at 315; *United States v. Agostini*, 280 F. Supp. 2d 260, 262 (S.D.N.Y. 2003) ("knowledge of the Conviction could potentially prejudice the jurors against [the witness], causing them to evaluate his worth as a witness based on his status as a convicted felon regardless of the actual relevance of the Conviction."). Accordingly, the court did not err in precluding cross-examination of Neunie's stale youthful offender adjudication.

### 3. Admitting Testimony by Cooperating Witness Williams

Petitioner argues that this court erred in permitting testimony from Williams, a cooperating witness that testified to telling Barret to provide Petitioner with marijuana after Petitioner allegedly left prison. (Pet. Mot. at 35-37.) Petitioner argues that -- despite the court's mitigating efforts -- Williams's testimony was unconstitutionally prejudicial for

the jury to have heard the challenged testimony.  (*Id*.)  The
government counters that permitting this testimony was not
unduly prejudicial because Petitioner himself had testified that
he had, in fact, previously been in jail.  (Gov. Opp. at 29-30.)
The court finds that Petitioner's claim is without merit.

The Second Circuit has held that the prejudicial
nature of witness testimony can be redressed through striking
the problematic testimony and issuing limiting instructions for
the jury.  *See United States v. Delance*, 694 F. App'x 829, 835–
36 (2d Cir. 2017) (finding that the district court addressed
concerns about the prejudicial nature of contested witness
testimony by striking the testimony and that the district
court's use of a limiting instruction should have mitigated the
concern about any unduly prejudicial effect of the witness's
testimony); *see also United States v. Elfgeeh*, 515 F.3d 100, 127
(2d Cir. 2008); *United States v. Anzalone*, 626 F.2d 239, 245-46
(2d Cir. 1980) (affirming the denial of defendant's mistrial
motion).  Notably, the Second Circuit also recognizes a "strong
presumption" that juries follow a district court's limiting
instructions.  *Delance*, 694 F. App'x at 835. (quoting *United
States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006)).

During trial, this court struck Williams's contested
testimony from the record and instructed the jury to "disregard
[the testimony] and put it out of your minds."  (*See* ECF No.

493, Trial Transcript at 1445.)  The court also noted, "I specifically instruct you that the witness's understanding regarding his last answer is not accurate."  (*Id.*)

Although Petitioner may claim that the court erred by allowing the jury to hear the allegedly prejudicial testimony at all, the court finds this argument to be meritless.  By striking the contested statements from the record and issuing limiting instructions that the jury is presumed to follow, this court appropriately mitigated any unduly prejudicial effect Williams's testimony may have had on Petitioner at trial.  Accordingly, the court dismisses this claim.  For the foregoing reasons, Petitioner's challenges to this court's ruling at his trial are respectfully denied.

## III. Petitioner Received Effective Assistance of Counsel

Finally, Petitioner alleges that his Sixth Amendment right to counsel was violated because his trial counsel, Joseph Gentile, Esq., was ineffective allegedly failing to: (1) request a lesser including offense instruction for charges against Petitioner and (2) object to the Petitioner's offense level computation and guideline range.  (Pet. Mot. at 40-44.)  "[A] petitioner may bring an ineffective assistance of counsel claim [in a petition pursuant to Section 2255] whether or not the petitioner could have raised the claim on direct appeal."  *Mui*

*v. United States*, 614 F.3d 50, 54 (2d Cir. 2010) (citing *Massaro v. United States*, 538 U.S. 500, 509 (2003)).

For the reasons set forth below, this court finds that Petitioner has failed to meet the burden of proving ineffective assistance of counsel and that a hearing is not warranted to adjudicate this claim.

## A. Legal Standard

The Sixth Amendment protects the right of a criminal defendant "to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Constitution thus requires that a defendant receive "effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 (1970). In considering ineffective assistance of counsel claims, the Second Circuit has held that a defendant "need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi v. United States,* 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States,* 234 F.3d 820, 823 (2d Cir. 2000)).

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated a two-prong test to determine whether an attorney has provided ineffective assistance of counsel. "A [petitioner] claiming ineffective assistance must (1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing

professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *Grant v. Woods*, 313 F. App'x 376, 377 (2d Cir. 2009) (summary order) (citing *Strickland*, 466 U.S. at 688, 693) (citations omitted).  The *Strickland* standard is both "highly demanding," and "rigorous."  *Kimmelman v. Morrison,* 477 U.S. 365, 382 (1986); *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001).

The petitioner bears the burden of proving that both *Strickland* prongs are met.  *Byrd v. Evans,* 420 F. App'x 28, 30 (2d Cir. 2011) (summary order) (citing *Kimmelman,* 477 U.S. at 381).  In considering the performance prong, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689.  Petitioner is tasked with overcoming "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)).

Under the prejudice prong, courts consider "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.  To establish prejudice, a petitioner must demonstrate that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Henry v. Poole,* 409

F.3d 48, 63–64 (2d Cir. 2005) (quoting *Strickland,* 466 U.S. at

695). "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Strickland,* 466 U.S. at

694. Where, as here, a petitioner challenges his sentence, "the

petitioner must show that but for counsel's ineffectiveness,

there is a reasonable probability that the sentence imposed

would have been different." *Martin,* 834 F. Supp. 2d at 126

(citing *United States v. Workman,* 110 F.3d 915, 920 (2d Cir.

1997)).

When faced with an ineffective assistance of counsel

claim, the court must treat the allegation seriously and

determine whether a hearing is warranted. Under Section 2255,

"[u]nless the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief,

the court shall cause notice thereof to be served upon the

United States Attorney, grant a prompt hearing thereon,

determine the issues and make findings of fact and conclusions

of law with respect thereto." *Chang v. United States,* 250 F.3d

79, 84 (2d Cir. 2001) (citing 28 U.S.C. § 2255). A court need

not hold a full evidentiary hearing if the defendant's assertion

is unsupported by the trial record or if the court can solicit

written submissions sufficient to supplement the record. *Id.* at

86; *Burkhardt v. Bradt*, No. 12-cv-1919 (ADS), 2016 WL 7017363,

at *10 (E.D.N.Y. Dec. 1, 2016) ("Section 2255 does not require

'a full-blown testimonial hearing' when the district court can solicit written submissions sufficient to adequately supplement the record.")  Where there is sufficient evidence, the court is not required to engage in "the delay, the needless expenditure of judicial resources," and the other burdens of a fruitless hearing.  *Chang*, 250 F.3d at 86*; Lang v. United States,* No. 02-cv-1444, 2009 WL 4788430, at *2 (S.D.N.Y. Dec. 9, 2009).

### B. Lesser-Included Offense Jury Instruction

Petitioner argues that his trial counsel was ineffective for failing to request a lesser including offense instruction for charges against Petitioner.[6]  (Pet. Mot. at 40-43.)  In response, the government argues that this claim fails not only because Gentile did request a jury instruction on lesser-included offenses, but also because Petitioner did not suffer any prejudice.  (Gov. Opp. at 33-35.)  Having carefully reviewed the trial record, the court agrees with the government and concludes that Petitioner's claim is meritless.

As a threshold matter, the court denies Petitioner's claim because Gentile did, in fact, advocate on behalf of the Petitioner for the court to include a lesser included count into its jury instructions.  (*See* January 27, 2021 Trial Transcript

---

[6] In his Section 2255 Petition, Petitioner writes that he received ineffective assistance of counsel in regards to Count One and Five.  (*See* Pet. Mot.)  Because the Petitioner was not charged in Count One and was convicted of Count Two and Count Five, the court construes Petitioner's arguments to be with regards to Count Two and Count Five.

at 78-81.)  During the January 27, 2012 charging conference for this case, Gentile argued that this court should provide the jury with instructions regarding whether a lesser amount of marijuana -- namely, 100 kilograms of marijuana rather than 1,000 kilograms of marijuana -- was involved in this case. (*Id.*)  The purpose of Gentile's request was to enable the jury to potentially determine a lesser offense that would benefit Petitioner.  (*Id.* at 84.)  Indeed, the court instructed the jury to "separately consider whether the government has proven beyond a reasonable doubt that the conspiracy involved 1000 kilograms *or less.*"  (ECF No. 605-1, Trial Transcript at 2894 (emphasis added).)  Moreover, Gentile also indicated that the verdict sheet would be another way for the jury to determine how much marijuana Petitioner was involved with in his offenses. (January 27, 2021 Trial Transcript at 85.)  In turn, this court directed the jury to use the verdict sheet to indicate whether the government had "proven beyond a reasonable doubt the type of drug and the quantity involved in this offense."  (ECF No. 605-1, Trial Transcript at 2916.)

Based on the trial record summarized above, it appears that Gentile addressed Petitioner's present contentions at trial.  Accordingly, Petitioner has not met his burden of proving that his counsel's performance "fell below an objective standard of reasonableness" per the first prong of *Strickland*'s

ineffective assistance of counsel test.  *Strickland*, 466 U.S. at
688.  Furthermore, because this court did provide the jury with
the opportunity to find a lesser amount of marijuana involved in
Petitioner's charges (and therefore a lesser offense),
Petitioner has also failed to "affirmatively prove prejudice"
arising from his counsel's allegedly ineffective assistance.
*Id*. at 693.  Accordingly, the court finds that Petitioner's
ineffective assistance of counsel claim with respect to the jury
instruction is meritless.

### C. Offense Level Computation

Petitioner also argues that Gentile was ineffective
for failing to object to the Petitioner's offense level
computation and guideline range.  (Pet. Mot. at 43-44.)  The
government, however, responds that this claim is baseless
because Gentile did object to guidelines calculations and the
base offense level during the sentencing process.  (Gov. Opp. at
35-36.)  Having carefully reviewed the trial record, the court
concludes that Petitioner's ineffective assistance of counsel
claim with respect to the guidelines calculation is similarly
meritless.

Contrary to Petitioner's assertions, Gentile objected
to Petitioner's offense level computation and guideline range
while advocating for Petitioner's interests.  Specifically,
Gentile made several objections to the Petitioner's PSR: (1) the

description of Petitioner's role as an enforcer in the Barret drug organization, (2) the calculation of Petitioner's base offense level and criminal history level, under the sentencing guidelines, (3) the application of a firearms enhancement, and (4) the application of the obstruction of justice enhancement. (*See* Sent. Tr. at 30; *see also* ECF No. 625, Objection to PSR by Leon Scarlett.) Furthermore, Gentile sought a number of downward departures for Petitioner under the guidelines and advocated for a mandatory minimum sentence of 120 months—far below the 262-month to 327-month guideline range based on Petitioner's offense level and criminal history category. (*See generally* Sent. Tr.)

Although this court rejected Gentile's objections and declined to apply Gentile's requests for downward departures to 120 months, this does not negate Gentile's effectiveness as Petitioner's counsel. Because Gentile objected to Petitioner's offense level computation and guideline range prior to Petitioner's sentencing hearing, Petitioner's claim is without merit and fails both prongs of the *Strickland* test.

Even assuming that Petitioner could establish that his counsel's performance was deficient for failing to object to the sentencing enhancements, Petitioner could not satisfy the prejudice prong of the *Strickland* analysis because he cannot show that, without the application of the sentencing adjustments

and enhancements, the result of the proceeding would have been different. *See Porter v. United States*, No. 09-cv-1146 (CPS), 2009 WL 2601297, at *5 (E.D.N.Y. Aug. 20, 2009) ("[A]n attorney's failure to object to a guidelines miscalculation is not in itself necessarily sufficient to demonstrate ineffective assistance of counsel, even where the calculation error is blatant. There must be a showing that the ultimate sentence would have in fact been greater."). Even with his base offense level and Guidelines recommendation, Petitioner's sentence of 150 months for Count Two and five years for Count Five was ultimately below the advisory guideline range. (*Id.* at 77.) Thus, Petitioner cannot show that, even if the base offense level had been adjusted in the manner he seeks, the result of the sentencing would have been different. Accordingly, petitioner cannot show that he was prejudiced by his counsel's performance. *See Cekaj v. United States*, Nos. 14-cv-03004 (GBD), 12-cr-00600 (GBD), 2016 WL 354195, at *7 (S.D.N.Y. Jan. 25, 2016) (finding no prejudice when "[n]one of the alleged errors would have resulted in a different sentence imposed by the Court").

### D. A Hearing Is Not Warranted for This Claim

Because the trial record and written submissions of the case conclusively show that the Petitioner's ineffective assistance of counsel claims are meritless, the court concludes

that a hearing is not warranted for this claim.  *See Chang*, 250
F.3d at 84 (citing 28 U.S.C. § 2255).

**CONCLUSION**

For the foregoing reasons, petitioner's petition for
*habeas corpus* relief pursuant to 28 U.S.C. § 2255 is DENIED and
DISMISSED.  The Clerk of the Court is respectfully requested to
enter judgment in favor of respondent and close *Scarlett v.
United States*, No. 18-cv-2802 (E.D.N.Y. 2018) (KAM).  Mr. Tomao
is respectfully directed to mail a copy of this Order to Mr.
Scarlett and note service on the docket.

**SO ORDERED.**


_____/s/_____
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York


Dated:    Brooklyn, New York
          July 6, 2021